# Supreme Court Decisions.

## CONDEMNATION OF RIGHT OF WAY BY TELEGRAPH COMPANY ALONG LINE OF RAILWAY.

THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO. v. THE OHIO POSTAL TELEGRAPH CABLE CO. ET AL.

Decided, May 19, 1903—68 Ohio State, p. 306.

*Magnetic Telegraph Company—Seeks to Secure Right of Way Along Property of Railroad Company—Probate Court Proceedings—Sections 3456 to 3459, Revised Statutes—Court Must Hear Testimony and Decree no Practical Interference with Railroad—Burden of Proof on Telegraph Company—Compensation Due Railroad Company—Law of Easement and Appropriation.*

1. In a proceeding instituted in the probate court by a magnetic telegraph company, under the provisions of Sections 3456 to 3459, inclusive, of Revised Statutes, for the purpose of appropriating to its use a part of the right of way of a railroad company organized under the laws of Ohio, it is necessary and jurisdictional for that court to hear and determine, and so enter of record, that the easement sought to be appropriated by such telegraph company will not in any material degree interfere with the practical uses to which the railroad company is authorized to put such right of way. The burden of proof to establish that fact is upon the telegraph company, and until the court has so determined, it is without jurisdiction to order an appropriation and impanel a jury for the assessment of compensation to the railroad company.

2. When the necessary preliminary facts are found as prescribed by the statute, and the case proceeds to an inquiry as to the compensation due the railroad company, the measure of compensation is the amount of decrease in the value of the use of the right of way for railroad purposes which will result from the easement appropriated and used by the telegraph company.

Error to the Circuit Court of Crawford County.

On August 30, 1899, the defendant in error, The Ohio Postal Telegraph Cable Co., filed in the Probate Court of Crawford County, its petition against the plaintiff in error, and the holders

of certain trust deeds securing certain bonded indebtedness owing by the railway company, the purpose and prayer of which petition were to obtain by appropriation, the right of The Ohio Postal Telegraph Cable Co., to enter upon and occupy, for the erection and operation of its telegraph line, five feet of the right of way of the plaintiff in error, from the city of Cleveland, Ohio, to the state line at Union City—the five feet to be of the outer and southerly part of said right of way.

The right to make the appropriation is asserted under the provisions of Sections 3456 to 3459, inclusive, of Revised Statutes.

The plaintiff in that proceeding in the probate court alleged its corporate capacity under the laws of Ohio, and that the railway company owns a right of way for railroad purposes, about one hundred feet in width from Cleveland to Union City; and that the petitioner needed a line of telegraphic communication between these cities, and beyond, and that the most direct, safe and practical route for the construction of its line is on and along the right of way of said railway company, and that the board of directors of the telegraph cable company had duly adopted a resolution declaring it to be necessary to appropriate the right to use five feet of the southerly side of the right of way, and that it had been unable to agree with the railway company as to the compensation to be paid. The petition further details the character of poles to be erected, the wires to be strung and other fixtures which the telegraph cable company would place on the strip so to be appropriated; also "that the erection of the line of telegraph upon the right of way will not in any material degree interfere with the practical or usual and ordinary uses to which said railway company is authorized to put such right of way."

The petition was afterwards amended to claim the right of appropriation from a point one-half mile west of Berea station, in Cuyahoga county, on the southerly side of the right of way, to Shelby station, in Richland county, thence across the right of way to the northerly side thereof, and to continue on the northerly five feet of the right of way to Union City, on the state line.

After service had been duly made the railway company filed an answer upon which the preliminary hearing was had in the probate court. The answer is a general denial of each and every allegation in the petition and the amendments made thereto.

It is stated in briefs of counsel that on the hearing The Ohio Postal Telegraph Cable Co. introduced as part of its evidence the charter issued to it by the state of Ohio, the organization of the company thereunder, election of officers, and certain proceedings of its board of directors declaring the necessity for appropriating the portion of the right of way; and that thereupon the railway company sought to defeat the right of the telegraph cable company to institute the proceedings, by showing that there had been no payments made upon any of its capital stock, without which it could transact no business.

This latter point seems to have failed, no doubt because it is immaterial; and after hearing the evidence offered, the probate court made the following findings and order:

"TUESDAY, January 16, 1900.

"This cause having been continued from the ——— day of November, A. D. 1899, being the day theretofore fixed by the court for the hearing of this cause until the twenty-seventh day of November, A. D. 1899, upon said last named date came the plaintiff by its attorneys and also the defendant, The Cleveland, Cincinnati, Chicago & St. Louis Railway Co., by its attorneys, and this cause came on for hearing upon the petition of the plaintiff filed herein and the answer of said defendant railway company, all of the defendants having been duly and legally served with process or by publication herein, and upon the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owners of the property and the necessity for the appropriation, and the same was heard upon the evidence offered by the parties and was argued by counsel, and the court not being fully advised in the premises took the same under advisement; and

"Now, on this sixteenth day of January, A. D. 1900, the court, being fully advised in the premises, do find that the plaintiff is a corporation, and has a legal right to make the appropriation of the property described in the petition as prayed for; that the plaintiff is unable to agree with the owners of the property as to the amount of compensation to be paid therefor, and that there is a necessity for such appropriation as prayed for the petition; and the court proceeding as directed by statute, orders and directs that a jury be drawn as required by law, returnable at a time to be hereafter fixed by the court. To all of which findings of the court the defendants at the time excepted.

"CHARLES KINNINGER,
"Probate Judge."

The railway company filed a motion for a new trial March 3, 1900.

This motion was overruled on March 22, 1900, and a bill of exceptions as to the proceedings on preliminary hearing was allowed for the railway company April 23, 1900.

After making the findings and order of January 16, 1900, the probate court ordered a jury to assess to the railway company compensation on account of the appropriation. A jury was drawn and empaneled and the case heard. A verdict of $6,750 was returned by the jury and confirmed by the court. The motion for new trial filed by the Telegraph Cable Co. was overruled. One of the grounds of the motion was that the verdict was excessive. Error was prosecuted in the court of common pleas by The Postal Telegraph Cable Co. to reverse the probate court and obtain a new trial. The court of common pleas found error and reversed the judgment of the probate court and set aside said verdict, but retained the case for trial in the court of common pleas as to the question of compensation. Trial was had to a jury in that court, and a verdict for $500 compensation returned March 25, 1901, which verdict was confirmed on March 30, 1901.

During the trial exceptions were taken to the exclusion of evidence offered by the railway company, and also exceptions to the charge of the court, and for refusing to charge as requested.

Error is prosecuted in this court by the railway company to reverse the judgments of the lower courts.

*E. A. Foote, John T. Dye* and *H. D. Estabrook,* for plaintiff in error.

*Henry and Robert Newbegin* and *Frank L. Loesch,* for defendant in error.

PRICE, J.; BURKET, C. J., SPEAR, DAVIS, SHAUCK and CREW, JJ., concur.

The controversy between the parties to this case opened in the Probate Court of Crawford County in August, 1899, and it has been carried on with unremitting vigor through that and the intervening courts, and its various phases have been elaborately presented to this court in briefs.

Some of the arguments and a large amount of statistical and historical matter found in the almost unlimited brief for plaintiff in error are wholly superfluous, and we are asked to pass upon numerous questions which counsel discuss therein, many of which

are no longer material, and tend only to obscure, if not to lose sight of, the necessarily vital points found in the record.

Sifting the wheat from the chaff of the case, the subject of our labor may be divided into two branches: (1), The proceedings had on the petition of The Ohio Postal Telegraph Cable Co. against the railway company in the probate court for the purpose of appropriation to its use of part of its right of way, and which is called the preliminary hearing; (2), The questions arising on the trial before the jury for the assessment of compensation to the railway company.

(1). It is forcibly pressed upon our attention, by counsel for defendant in error, that by reason of the neglect of plaintiff in error, the proceedings at the preliminary hearing are not before us, because its motion for a new trial was not filed within the statutory time in such cases, and that the bill of exceptions purporting to contain the preliminary proceedings was not prepared and allowed within the time prescribed by statute. And we are cited to the record of the court of common pleas, where we find that for the above reasons that court struck from the files the bill of exceptions and dismissed the petition in error filed therewith by the railway company. And we further find that the circuit court affirmed the court of common pleas in so doing. This is complained of in this court as erroneous in case No. 7778 between the same parties, and which is a close companion of this case, and as such will be decided presently. However, we do not regard that controversy as very important now, and we may and do ignore the bill of exceptions as being properly stricken from the case; and yet we have remaining in the record a vital question as to the jurisdiction acquired by the probate court, and this is exhibited in the certified transcript of that court, which was a necessary part of the record in each of the reviewing courts, and also of the record in this court. This is properly so in order that we may have a continuous chain of the controversy from its inception in August, 1899, down to the last verdict and judgment of the trial court in March, 1901.

An issue was made up between the defendant in error and the railway company when the latter denied each and every allegation of the petition asking the appropriation.

The petition was more than the ordinary petition to appropriate the property of another, and it was so necessarily, because the

statute under which the petitioner was proceeding required aver-
ments of fact not usual or required in other cases of appropriation.
After fully describing what ground it desired to use and what it
expected to place and erect on the premises desired and other facts
to give the court juirsdiction to hear the case, it is alleged:

"Plaintiff says that the erection of said telegraph line upon said
right of way of said railway company will not in any material
degree interfere with the practical or usual and ordinary uses to
which said railway company is authorized to put such right of
way; but, that if this Honorable Court, nevertheless, shall be sat-
isfied that the construction of said line in any place will interfere
in any material degree with such use of the right of way by the
defendant railway company, this plaintiff hereby offers and stands
ready at all times to construct and erect the line at such other
places and in such manner as this Honorable Court shall direct
and require."

This language as a part of the petition would naturally occur
to the pleader on the reading of the statute under which the tele-
graph cable company was proceeding.

The act authorizing the steps taken by defendant in error was
passed March 31, 1865, and so far as we know judicially has had
a silent and harmless existence until it was invoked in this case.
By Section 3456, Revised Statutes, a magnetic telegraph company
may enter upon any land, whether owned by an individual or cor-
poration, for the purpose of a preliminary survey and examination
with a view to locating and erecting its lines, and that it "may
appropriate so much thereof as may be deemed necessary for the
erection and maintenance of its telegraph poles, piers, abutments,
wires and other necessary fixtures, and for stations, and the right
of way over such lands and adjacent lands sufficient to enable it
to construct and repair its lines."

The next section, 3457, limits the right of occupation by the
telegraph company so that it may not interfere with buildings and
enclosures belonging to the landowner.

It is provided in Section 3458:

"When lands sought to be appropriated for lines of magnetic
telegraph are held by a corporation incorporated under any law
of this state, whether held by purchase or in virtue of any appro-
priation authorized by its charter or by any law of this state, the
right of the company to appropriate such lands shall be limited
to such use of the same as shall not in any material degree inter-

fere with the practical uses to which the company is authorized
to put such lands under its charter." * * *

Because of this express limitation on the right to appropriate
the lands of an Ohio corporation, it was incumbent upon the tele-
graph cable company to plead in its petition a proposed condition
which would be within the statutory limitation, and it so pleads,
as we have quoted from that petition. Therefore, when the rail-
way company denied, as it did, each and every allegation in the pe-
tition, the averment quoted was put in issue, and the burden of
proof was upon the petitioner to satisfy the probate court of the
truth of that as well as other jurisdictional averments. It is not
difficult to see how important the inquiry would be on this sub-
ject of probable conflicting uses. In this case the property to be
used is the right of way of a railroad company holding an Ohio
charter, as the petition avers, and it devolved upon the petitioner
to satisfy the probate court that the use and occupancy it desired
would not *"in any material degree interfere with the practical
uses to which the company is authorized to put such lands under
its charter."* This recognizes the well-settled rule that property
devoted to one use can not be subjected to another use, unless it
be consistent with the first.

The briefs of counsel are silent on this subject, and we can not
find in them any statement tending to show whether or not any
evidence was introduced on the preliminary hearing touching this
question, and, unless we look into the forbidden bill of exceptions,
we can not know with absolute certainty. But we have a right to
assume that no such testimony was offered or received, because
the record of the probate court is entirely silent and contains no
finding upon the subject; and in this, we think that record is
fatally defective.

Section 3459, Revised Statutes, provides that:

"The right of such company to use lands held by a railroad
company, for the permanent structures of said telegraph, shall
be limited to the land which lies within five feet of the outer limits
of the right of way of the railroad company, where it is prac-
ticable to erect the line within those limits; when the company
seeks to appropriate lands that lie beyond those limits its peti-
tion must set forth the facts, showing that it is impracticable to
erect such line within said limits * *. * *The probate court
shall in all instances determine, if it be controverted by the rail-*

*road company, whether the erection of the line at the place or places designated will in any material degree interfere with the practical uses to which such railroad company is authorized to put such lands, and if the court is satisfied that it will so interfere, it shall reject the petition, or require the structure to be erected at such other place or places, as the court shall direct."* * * *

In the case at bar the telegraph company desired to appropriate to its use the outer five feet of the right of way of the railroad company, and it alleged that such use would not interfere in any material degree with the practical uses of the right of way by the railroad company. This was controverted by the latter company by answer in the probate court. On the controversy the above statutes make it the duty of that court to determine as a jurisdictional fact whether or not the desired use and occupancy will interfere in any material degree with the practical uses the railroad company has a right to make of its right of way. The court had no discretion on the subject because the statute is mandatory. It is a wise provision and is intended to ascertain, to some extent at least in advance of calling of a jury to assess compensation, whether the desired use will be compatible with the rights of the railroad company.

How does the record stand on this point? As seen from the entry copied in the statement of this case the probate court made no finding on the issue joined as to the conflicting use. The findings are such only as are made in the ordinary case for the appropriation of property, as follows:

"Now, on this sixteenth day of January, A. D. 1900, the court being fully advised in the premises, do find that the plaintiff is a corporation and has a legal right to make the appropriation of the property described in the petition as prayed for; that the plaintiff is unable to agree with the owners of the property as to the amount of compensation to be paid therefor, and that there is a necessity for such appropriation as prayed for in the petition; and the court proceeding as directed by statute, orders and directs that a jury be drawn," etc.

These findings are such as are contemplated by Section 6420, Revised Statutes, which is a part of the general act for appropriation of property. But the telegraph company, in order to avail itself of that act, to enter upon and appropriate the use of a part of a right of way from another corporation, must bring itself within the provisions of the law which authorize such a proceeding,

and plead and prove the additional jurisdictional fact upon which the court can authorize the appropriation. The facts were plead, but no hearing was had upon them, as we assume, for the court did not pass upon them.

We regard the finding required in Section 3459, *supra,* as essentially jurisdictional, and that it would be the chief stone in the foundation upon which the telegraph company must base its right to institute and conduct the inquiry as to compensation to the owner; and where this chief stone, prescribed by statute to be laid at the preliminary hearing, is absent, the superstructure will not withstand attack, especially when made in a direct proceeding.

Adopting the above course of reasoning, we are of opinion that the probate court did not obtain jurisdiction to order the appropriation and make the order of an inquiry of compensation before a jury. If the petitioner made no proof under Section 3458, Revised Statutes, *supra,* the petition should have been rejected.

(2). What we have said under the first branch of the case might well terminate our labor; but as the reversal will take the case back to the probate court for a new preliminary hearing on the petition and answer, it is best to dispose of the grave contention concerning the true measure of damages to be adopted, for the guidance of the jury, if the case should reach that stage and require, as it would, an inquiry and assessment of compensation.

The record of the trial on this subject in the lower court discloses many vain efforts on the part of the railroad company to introduce some evidence of the threatened invasion of its rights and its injurious consequences. It succeeded in qualifying some of its witnesses to give testimony as to the value of its right of way, with and without the incumbrance of the telegraph company, but they were not allowed to state what the difference in value would be. Various other forms of inquiry were resorted to in order to reach the measure of compensation, but none were satisfactory to the court, and in the end there was no evidence admitted upon which the jury could pass. Therefore the verdict of the jury was rendered practically without any evidence, except it be the charge of the court.

Some of the evidence offered was properly excluded, but in all the rulings of the court upon the constant controversies over the introduction of testimony, the court was content with sustaining

objections, and at no time did it undertake to lay down any rule by which counsel might be guided. And after the close of all vain efforts, the court, after reading the petition and answer, gave the following and only charge: ·

"The court charges you that the damages sustained by the railroad company by such use of said five-foot strip by the plaintiff, the telegraph company, can only be nominal damages. Nominal damages in this case may be anywhere from $100 to $500.

"Your verdict will be for the defendant for such damages as you find it has sustained within the above limits."

The jury took the suggestion of the court and returned a verdict for $500.

In our judgment the instruction is not the law of the case, nor is it even a faithful remembrance of the meaning of "nominal damages."

It is said that the trial court obtained the above standard of compensation from the following and similar cases cited in brief of defendant in error: *Mobile & Ohio R. R. Co.* v. *Postal Tel. Cable Co.* (Tenn.), 41 L. R. A., 403 (case between same parties before Supreme Court of Alabama, 24 Southern Reporter, 408); *Postal Tel. Cable Co. of Idaho* v. *Oregon Short Line R. R. Co.*, 104 Fed. Rep., 623 (case between same parties, 111 Fed. Rep., 842); *Postal Tel. Cable Co. of Utah* v. *Oregon Short Line R. R. Co.*, 65 Pacific Rep., 735; *St. L. & C. R. R. Co.* v. *Postal Tel. Co.*, 173 Ill., 508; *C. B. & Q. R. R. Co.* v. *Chicago*, 166 U. S., 226.

We have examined those cases and the facts upon which they stand, and the rule held in most of them is entirely different from the instruction given by the trial court in this case. True, in two of the cases, the judges deciding them use the term "nominal damages" as the standard of recovery, but it was a conclusion from the facts of the case in hand, and not as a rule of law to govern in other cases. The two cases referred to are *Mobile & Ohio R. R. Co.* v. *Postal Tel. Cable Co.*, 41 L. R. A., 403 (same parties, 24 Southern Reporter, 408). But they quote and approve the rule adopted in the other cases, which we will briefly notice.

In *Postal Tel. Cable Co. of Idaho* v. *Oregon Short Line R. R. Co.*, 104 Fed. Rep., 623, *supra*, Beatty, District Judge, held:

"The compensation which a telegraph company is required to pay for the right to construct and maintain its line upon the right of way of a railroad company is the amount of decrease in the

value of the use of such right of way for railroad purposes which will result."

That case went to the circuit court of appeals, where it was affirmed, and is found in 111 Fed. Rep., 842, *supra.* Other questions than compensation were involved on which the district court was affirmed, and the court of appeals would not reverse alone because it was claimed the amount of compensation was inadequate, that question being peculiarly one for the trial court rather than a court of error.

In *Postal Tel. Cable Co. of Utah* v. *Oregon Short Line R. R. Co.,* 65 Pac. Rep., 735, *supra,* the court found as a fact that the part of right of way sought to be condemned by the telegraph company was idle property and not then used for any purpose by the railroad company, and hence the opinion as to nominal damages.

In *St. Louis & Cairo R. R. Co.* v. *The Postal Tel. Co.,* 173 Ill., 508, *supra,* the court favored the rule as stated in 13 Syl.:

"The measure of damages where a telegraph company condemns a right of way for its use along and upon a railroad right of way is the value of the land actually taken for placing the poles, and the extent to which the value of the use of the portions between the poles and under the wires for railroad purposes is diminished by their use by the telegraph company."

In *C. B. & Q. R. R. Co.* v. *Chicago,* *supra,* the city of Chicago instituted proceedings to open and extend one of its public streets over the tracks of the railroad, and one of the controversies was over the measure of compensation and damages. The case reached the Supreme Court of the United States, as found in 166 U. S., 266.

In the consideration of the amount of compensation allowed to the railroad company in the state courts, the Supreme Court of the United States decided that it could not examine the evidence to determine whether the verdict was inadequate or not, inasmuch as its review was confined to fundamental questions of law. As to the lawful measure of compensation on the facts of that case, the court held the following proposition:

"In a proceeding in a state court in Illinois to ascertain the compensation due a railroad company arising from the opening of a street across its tracks—the land as such not being taken, and the railroad not being interfered with only so far as the right

to its exclusive enjoyment for purposes of railroad tracks was diminished in value by subjecting the land within the crossing to public use as a street—the measure of compensation is the amount of decrease in the value of its use for railroad purposes caused by its use for purposes of a street, the use for the purposes of a street being exercised jointly with the company for railroad purposes."

Other cases cited for defendant in error are not materially different and we will not review them. Enough is seen in all of them to determine that the competent evidence of the injury and inconvenience to be incurred by creating the second easement are to be the basis of just compensation, and unless the facts show that no substantial damage will be sustained by the railroad company, the court is not warranted in charging the jury that merely nominal damages can be recovered.

The petition for the appropriation in this case detailed the size, height and character of poles to be erected on the right of way or the five-foot strip thereof, and the other fixtures to be placed along the line. Full inquiry was competent at the trial for compensation to develop what the real situation would be when the telegraph company would have its line completed and in operation.

The width and character of the right of way of the railroad along the entire line to be so encumbered is also competent, so that the jury might have fully as possible what the new use by the telegraph company will be.

Of course it will not and can not appropriate in fee simple any part of such right of way, nor abridge the right of the railroad company to the use of its entire right of way, except so far as it may be necessary for the new easement to be created and used for a line of telegraph; that is, to plant and erect poles, string the wires and make a complete line of telegraphic communication as detailed in the petition for appropriation, and the right to enter and go along the line to make needed improvements and repairs inside the foregoing limits.

Another observation in this connection should not be overlooked, and in this respect the statutes of this state may be unlike those of states from which above cases have been taken.

Our General Assembly has imposed on railroad companies certain duties in caring for and maintaining their rights of way so that the public, and especially adjoining land owners, may not suffer from fires which start on railroad premises. Other restrictions

are placed upon the use and condition of the right of way. Whatever these imposed obligations may be we think they may be properly taken into account, inasmuch as the telegraph company does not assume them, nor are they imposed upon it by reason of its joint occupancy of a part of the right of way.

It seems quite reasonable, that when a telegraph company, by virtue of the statute, condemns to its use a part of the premises of one of the trunk line railroads of the country for the distance appearing in this case, that more than mere nominal damages or compensation may be involved.

From the best light we have upon the law applicable to this case, we believe the measure of compensation should be the amount which the right of way of the railroad company for railroad purposes is diminished in value by the proposed easement of the telegraph company; or, in other words, the amount of the decrease in the value of the use of such right of way for railroad purposes, which will be caused by the appropriation of an easement on the same for the purpose of erecting and maintaining a telegraph line thereon.

It may be said that this rule should be modified or limited in its application, because of the provision in the statute authorizing the appropriation whereby the railroad company, at any future time, may notify the telegraph company that it needs for railroad purposes a part or all of the ground occupied by it, in which event the telegraph company is required to yield possession and locate elsewhere. We think there should be no such modification for that reason.

The appropriating company, desiring to avail itself of a statute containing such a provision, assumes all the risks of being ousted in whole or in part, and ventures upon gaining possession and holding it against the will of the railroad company. The latter does not welcome the new companion, and it may, in course of time, be asked to give way to the needs of the railroad. But it may not comply, and litigation will follow to secure full possession to the owner of the right of way. Of the probability of these sequences the telegraph company has full knowledge, and it can not insist that such probable results should mitigate the compensation to be paid for the right of appropriation.

In conclusion we find that the trial court erred in the charge

to the jury, and the circuit court erred in affirming the judgment of the former.

The judgments of the circuit court, the court of common pleas and the probate court are reversed, and the cause is remanded to the probate court for a new preliminary hearing on the petition and answer thereto, and for further proceedings according to law.

*Judgments reversed.*